UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

ERNESTO LOPEZ,

                       Petitioner,

     -against-

HAROLD D. GRAHAM, Superintendent, Auburn
Correctional Facility,

                     Respondent.

-----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-0468 (NGG)**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ MAY 2 2 2012 ★

BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

     Ernesto Lopez brings this pro se Petition for Writ of Habeas Corpus, pursuant to 28

U.S.C. § 2254, attacking his state convictions in 2004 for robbery and endangering the welfare of

a child. He asserts three claims: (1) that the trial court failed to give proper consideration to his

pro se application to replace his court-appointed attorney; (2) that he received ineffective

assistance of counsel; and (3) that the trial court denied him due process in sentencing him as a

persistent violent felony offender. For the reasons set forth below, Lopez's Petition is DENIED.

**I.    BACKGROUND**

    **A.   Facts**[1]

     On March 9, 2003, sometime after 10:30 p.m., thirteen-year-old Luis Abreu and his

twelve-year-old brother, Pedro Abreu, were riding home on the subway after completing a

seven-hour shift packing groceries at a supermarket. (Def. App. Br. (Docket Entry # 8-1) at 7.)

While on the M train, the Abreu brothers noticed two men, whom they later identified as Lopez

---

[1]    The following facts are drawn from Lopez's description of the evidence the prosecution presented at trial as
set forth in the brief he filed with the Appellate Division on direct appeal. (Docket Entry # 8-1.)

and his co-defendant, Edwin Cruz, looking at the brothers and whispering.[2]  (Id. at 7-8.)  After the brothers got off the M train at the Myrtle Avenue-Wyckoff Avenue stop, Lopez and Cruz disembarked the train as well and followed the brothers as they walked through the station.  (Id.) When the brothers approached an escalator, one of the men signaled them to take the stairs rather than the escalator, but the brothers walked down the escalator anyway.  (Id. at 8.)

As the brothers were walking down the escalator, Lopez grabbed Luis by the neck and covered his mouth.  (Id.)  As Lopez held Luis, Cruz went through Luis's pockets and took his money.  (Id.)  Meanwhile, Pedro ran down the escalator and, seeing the police, called out to them.  (Id.)  Lopez and Cruz fled to another part of the subway station.  (Id.)

About a minute later, Pedro returned with the police, including Officers James Kasyjanski and Leslie Medina.  (Id.)  The brothers and the police immediately headed for the Manhattan-bound platform of the M train station.  (Id.)  The police and the brothers saw Lopez and Cruz on the platform, and the two men turned around and started walking toward them.  (Id. at 9.)  The Abreus identified Lopez and Cruz as the men who had robbed them.  (Id.)  The police arrested Lopez and Cruz and found a ten dollar bill and five singles in one of Lopez's pockets, which Luis claimed he had made working at the grocery store that day.  (Id. at 7, 9.)

## B.   Trial Court Proceedings

Lopez and Cruz were charged in New York Supreme Court, Kings County, with second-degree robbery, third-degree robbery, fourth-degree grand larceny, fifth-degree criminal possession of stolen property, and two counts of endangering the welfare of a child.  (Aff. of Camille O'Hara Gillespie in Opp'n to Pet. for Writ of Habeas Corpus (Docket Entry # 8) ("Gillespie Aff.") ¶ 5.)

---

[2]      The court will refer to the brothers by their first names and the co-defendants by their last names.

John B. Stella was appointed to represent Lopez. (See Aff. of John B. Stella (Ex. VIII to People's Opp'n to Def. Mot. to Vacate J. (Docket Entry # 10-3)) ("Stella Aff.") ¶ 2.) On August 19, 2003, six months prior to the scheduled date of trial, Lopez filed a pro se motion to replace Stella as his attorney.[3] (Def. Mot. for Reassignment of Counsel (Ex. O to Def. Mot. to Vacate J. (Docket Entry # 10-2)).) Also prior to Lopez's trial, Edwin Cruz pled guilty to second-degree robbery and implicated Lopez. (Def. App. Br. at 2; Tr. (Docket Entry # 9-1) at 83.)

Lopez's jury trial began in February 2004. (Gillespie Aff. ¶ 8.) Pedro Abreu, Luis Abreu, and Officers Kasyjanski and Medina testified as prosecution witnesses. The Abreus and Officer Kasyjanski identified Lopez as the man who had committed the robbery. (Trial Tr. (Docket Entry # 9-3) at 264-66 (Kasyjanski); Trial Tr. (Docket Entry # 9-4) at 311-12 (Luis Abreu); id. at 350-51 (Pedro Abreu).) Defense counsel then alerted the court to Lopez's motion for reassignment of counsel, which had not yet been resolved. (Trial Tr. (Docket Entry # 9-4) at 371-72.) The court denied the motion. (Id. at 373.) After Officer Medina's testimony and the close of the prosecution's case, the defense recalled Officer Kasyjanski, who testified that, because he did not speak Spanish, his memo book entries regarding the robbery were based on information provided to him by Officer Medina. (Id. at 407-10.)

On March 2, 2004, the jury convicted Lopez of second-degree robbery and endangering the welfare of a child.[4] (Trial Tr. (Docket Entry # 9-5) at 495-99.) On March 30, 2004, the court sentenced Lopez, as a persistent violent felony offender with four prior violent felony convictions, to concurrent prison terms of twenty-three years to life on the robbery conviction

---

[3]     The details of this motion and its resolution will be discussed below. (See Part III.A, infra.)

[4]     The court in its discretion declined to submit the remaining counts of the indictment to the jury. (Trial Tr. (Docket Entry # 9-4) at 404-06.)

3

and one year on the conviction for endangering the welfare of a child. (Sentencing Tr. of Mar. 30, 2004 (Docket Entry # 9-5) at 6.)

### C.   Direct Appeal

On January 30, 2007, Lopez perfected an appeal of his judgment of conviction to the New York Supreme Court Appellate Division, Second Department. (Gillespie Aff. ¶ 11.) Lopez argued: (1) that the trial court deprived him of his constitutional right to counsel and due process by failing to give proper consideration to his pro se application to replace his court-appointed attorney (Def. App. Br. at 11-17); and (2) that his sentence should be vacated because, among other reasons, the State failed to comply with New York Criminal Procedure Law § 400.16, which requires the State to file a predicate felony statement and give the defendant an opportunity to controvert the allegations in the statement if it seeks to sentence the defendant as a persistent violent felony offender (id. at 18-21).[5]

On March 25, 2008, the Appellate Division affirmed Lopez's judgment of conviction. People v. Lopez, 49 A.D.3d 899 (2d Dep't 2008). With respect to Lopez's motion for reassignment of counsel, the court concluded that "[t]he trial court conducted a sufficient inquiry regarding the basis of [Lopez's] request for new counsel" and that "[n]o further investigation was required because his conclusory assertions did not suggest a serious possibility of irreconcilable conflict with defense counsel." Id. at 899. The court then concluded that Lopez's challenge to his sentencing procedure was unpreserved for appellate review and, in any event, without merit. Id. at 899-900. Lopez was denied leave to appeal to the New York Court of Appeals. People v. Lopez, 10 N.Y.3d 866 (2008).

---

[5]   Lopez filed a pro se supplemental brief on July 27, 2007, raising three other claims not pertinent to the instant Petition. (Def. Supp. App. Br. (Docket Entry # 8-1).)

### D.     Motion to Vacate Judgment

Lopez then moved in New York Supreme Court, Kings County, to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. (Def. Mot. to Vacate J. (Docket Entry # 10-2).) He argued, among other things, that he had received ineffective assistance of counsel for various reasons that will be discussed in Part III.B below.[6] (Def. Mem. of Law in Supp. of C.P.L. § 440.10 Mot. (Docket Entry # 10-2).)

On July 30, 2009, the court denied Lopez's motion, concluding that Lopez's claims were "both procedurally barred and without merit." (N.Y. Sup. Ct. Decision & Order of July 30, 2009 (Docket Entry # 10-3) at 1.) Lopez was denied leave to appeal this decision to the Appellate Division. (N.Y. App. Div. Decision & Order on Appl. (Docket Entry # 10-3).)

### E.     Petition for Writ of Habeas Corpus

On January 21, 2010, Lopez submitted the instant Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. (Docket Entry # 1.) He asserts three claims: (1) that the trial court failed to give proper consideration to his pro se application to replace his court-appointed attorney; (2) that he received ineffective assistance of counsel; and (3) that the trial court denied him due process of law in sentencing him as a persistent violent felony offender. (Pet. for Writ of Habeas Corpus (Docket Entry # 1) ("Pet").) Respondent submitted a memorandum of law in opposition to the Petition (Resp. Opp'n (Docket Entry # 8)) and Lopez replied (Pet. Reply (Docket Entry # 12-1)).

## II.     HABEAS CORPUS STANDARDS

Under 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court

---

[6]        Lopez also argued that the prosecution failed to supply the defense with certain materials required by People v. Rosario, 9 N.Y.2d 286 (1961). This argument is not pertinent to the instant Petition.

only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief: (1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

### A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," meaning that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (internal quotation marks omitted).

"A petitioner is not required to cite 'book and verse on the federal constitution' in order for a claim to be 'fairly presented.'" Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011 WL 3298876, at *6 (E.D.N.Y Aug. 1, 2011) (quoting Picard v. Connor, 404 U.S. 270, 275, 278 (1971)). "Instead, exhaustion may be satisfied where the legal basis of a claim made in state court is the 'substantial equivalent' of the habeas claim." Id. (quoting Picard, 404 U.S. at 278). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye, 696 F.2d at 192. Thus, even if a petitioner does not cite any federal constitutional provisions, he may fairly present his federal claim to the state court through:

> (a) reliance on pertinent federal cases employing constitutional analysis,
> (b) reliance on state cases employing constitutional analysis in like factual

6

situations, (c) assertion of the claim in terms so particular as to call in mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194.

Notably, *every* claim that a petitioner makes in his § 2254 application must first have been raised in state court in order for the petition to be considered exhausted. This "total exhaustion" rule requires that "a district court [ ] dismiss habeas petitions containing both unexhausted and exhausted claims." Rose v. Lundy, 455 U.S. 509, 513, 522 (1982). But there is an important exception to the total exhaustion rule—created by a 1996 amendment to AEDPA— whereby a district court may *deny* an *entire* habeas petition on the merits notwithstanding a petitioner's failure to exhaust some or all of his claims. See 28 U.S.C. § 2254(b)(2). In other words, a court may deny but not grant "mixed petitions" on the merits. Caswell v. Racetti, No. 11-CV-0153 (MAT), 2012 WL 1029457, at *4 (W.D.N.Y. Mar. 26, 2012) (citing Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001)).

**B.   Procedural Bar**

"It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009) (internal quotation marks omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."[7] Id.

---

[7]    As an exception, a court may consider a procedurally barred claim on the merits if the prisoner demonstrates: (1) "cause" for failing to comply with the state procedural rule; and (2) "prejudice" from the procedural bar. Wainwright v. Sykes, 433 U.S. 72, 92 (1977).

"[T]he adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." Id. (internal quotation marks and alteration omitted). Thus, courts "have an independent duty to scrutinize the application of state rules that bar [its] review of federal claims." Id. at 468.

The concepts of procedural bar and exhaustion often interact in an important way. If a § 2254 petitioner has failed to present a claim to a state court but *can no longer do so*—for example, if the time to file a state-court appeal has passed—then that claim is considered procedurally barred rather than unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court [ ] resulted in a procedural default of those claims"); Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied" but the petitioner is barred "from litigating the merits of th[at] claim[] in federal habeas proceedings"). A court's conclusion that a claim is procedurally defaulted rather than exhausted permits the petitioner to avoid the harsh effects of the "total exhaustion" rule discussed above—that is, if a claim has not been presented to the state court but can *no longer* be brought in state court, the court may consider the petitioner's remaining claims on the merits so long as *those* claims have been exhausted. See Turner, 262 F.3d at 122-23.

8

## C.    AEDPA Deference

Where a state court does reach the merits of a claim asserted in a § 2254 habeas petition,

the state's decision is reviewed under the deferential standard set forth in AEDPA.  AEDPA

provides that:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—(1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2) resulted in a
> decision that was based on an unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

Id. § 2254(d); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the

Supreme Court's decisions as of the time of the relevant state-court decision." Howard v.

Walker, 406 F.3d 114, 122 (2d Cir. 2005).  A state court decision is "contrary to" clearly

established federal law "if the state court arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides a case differently than [the

Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S.

362, 413 (2000).  A state court decision is an "unreasonable application" of clearly established

federal law "if the state court identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's

claim, but whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal

quotation marks, alterations, and emphases omitted).  The petition may be granted only if "there

is no possibility fairminded jurists could disagree that the state court's decision conflicts with

[the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

9

Under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## III.  DISCUSSION

### A.  Reassignment of Counsel

Lopez argues that the trial court deprived him of his constitutional right to counsel by failing to give proper consideration to his pro se application to replace his court-appointed attorney. (Pet. at 1.) The Appellate Division rejected this claim on the merits. See Lopez, 49 A.D.3d at 899. For the reasons that follow, the Appellate Division's conclusion was not contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).

The Sixth Amendment, which applies to the states through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defence." U.S. Const. amend VI. "While the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988). The Sixth Amendment also does not "guarantee[] a meaningful relationship between an accused and his counsel." Morris v. Slappy, 461 U.S. 1, 14 (1983) (internal quotation marks omitted). Thus, "[a] court need go no further than ensuring that each defendant has an 'effective advocate.'" Allison, 2011 WL 3298876, at *9 (quoting Wheat, 486 U.S. at 160).

10

The Second Circuit has further limited a defendant's right to reject assigned counsel once trial has begun. Once trial begins, "a defendant has no unbridled right to reject assigned counsel and demand another," and "courts must impose restraints on the right to reassignment of counsel in order to avoid the defendant's manipulation of the right." United States v. John Doe # 1, 272 F.3d 116, 122 (2d Cir. 2001) (internal quotation marks omitted). "Therefore, in order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981) (internal quotation marks and alteration omitted).

When reviewing on direct appeal a federal district court's denial of a motion for reassignment of counsel, the Second Circuit reviews that decision for abuse of discretion. See John Doe, 272 F.3d at 122. It applies a four-factor test to evaluate whether the district court abused its discretion: (1) "whether defendant made a timely motion requesting new counsel"; (2) "whether the trial court adequately inquired into the matter"; (3) "whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense"; and (4) "whether the defendant substantially and unjustifiably contributed to the breakdown in communication."[8] Id. at 122-23 (internal quotation marks omitted). Although AEDPA requires this court to apply a standard of review

---

[8]     The Second Circuit has not directly addressed whether its stringent standards for reassignment of counsel during trial, as well as its four-factor test for reviewing denials of motions for reassignment, apply in the same fashion where, as here, the defendant brought his motion for reassignment well before trial. The Circuit has implied, however, that these standards do apply to pre-trial motions, and that the timeliness of the defendant's motion affects only the *outcome* of the application of the standards, not whether the test applies in the first place. See, e.g., John Doe, 272 F.3d at 123 (repeating the Second Circuit's standards for reassignment of counsel at trial; noting that "the government d[id] not dispute the timeliness of [defendant's] motions for substitution"; and then stating that "whether [defendant's] motion was timely made is but one of the four factors that this Court will apply and, even treating the motion as timely, application of the remaining three factors demonstrates that there was no abuse of discretion"). In any event, to the extent that laxer standards should apply to motions for reassignment made well before trial, these standards have not yet been established in federal law (let alone by the Supreme Court), and thus Lopez would not be entitled to benefit from them for the purposes of the instant Petition. See 28 U.S.C. § 2254(d).

11

that is more deferential to the State's conclusions than the abuse-of-discretion standard, see 28

U.S.C. § 2254(d), courts have found this four-factor test "instructive in determining whether the

state courts' adjudication of [a] Sixth Amendment claim was a reasonable application of an

established constitutional right," Allison, 2011 WL 3298876, at *10.  The court will therefore

employ the John Doe test for this instructive purpose, mindful that it must be placed in the

context of AEDPA's highly deferential framework.

        1.     Timeliness of Motion

    The first factor—timeliness of the motion for reassignment—weighs in Lopez's favor.

Lopez filed his motion on August 19, 2003, six months prior to the scheduled date of trial.  (See

Def. Mot. for Reassignment of Counsel.)  That was early enough to prevent significant

interruption to Lopez's trial proceedings, and Respondent does not suggest otherwise.

    Moreover, Lopez cannot be faulted for the delay in resolving his motion.  The record

shows that Lopez's motion was referred to New York Supreme Court Justice James P. Sullivan

and calendared for October 15, 2003 (see Ex. P to Def. Mot. to Vacate J. (Docket Entry # 10-2)),

but was not resolved until trial (see Trial Tr. (Docket Entry # 9-4) at 371-73).  After trial, Lopez

requested from the court a copy of its decision on his pre-trial motion.  (See N.Y. Sup. Ct.

Decision & Order of Mar. 29, 2006 (Ex. Q to Def. Mot. to Vacate J. (Docket Entry # 10-2)).)

Justice Sullivan issued a short opinion on that request, which first noted that Lopez "was not

produced" on October 15, 2003, and that his "appearance was waived" that day.  (Id.)  Justice

Sullivan then concluded that, because "the case appeared on the . . . calendar several times and

proceeded through a suppression hearing and trial . . . without [Lopez] making any further

complaint about the nature or quality of his legal representation," Lopez "must be deemed to

12

have abandoned his application for the reassignment of counsel or waived his right thereby rendering his application moot." (Id.)

Given that Lopez's motion had already been ruled upon at trial, it is unclear what purpose was served by Justice Sullivan's determination that Lopez had waived his motion. But to the extent that the state court concluded that it did not need to resolve Lopez's motion prior to trial because Lopez had abandoned it, that determination was an unreasonable application of clearly established federal law. "A waiver of a constitutional right must be voluntary, knowing and intelligent, that is, the act of waiver must be shown to have been done with awareness of its consequences." United States v. Canady, 126 F.3d 352, 359 (2d Cir. 1997). Nothing in the record suggests that Lopez knowingly abandoned his motion for reassignment, and the fact that Lopez's defense counsel alerted the court to Lopez's motion during trial (Trial Tr. (Docket Entry # 9-4) at 371-372) suggests the contrary. Having made his motion in August 2003, Lopez was entitled to assume that the court would rule on it, and had no obligation to remind the court about a motion that he fairly assumed was pending. Thus, Lopez's motion was timely.

      2.    Adequacy of Inquiry

The second factor the court considers with respect to the state court's adjudication of Lopez's motion for reassignment is "whether the trial court adequately inquired into the matter." John Doe, 272 F.3d at 122. This factor weighs against Lopez.

"With regard to the second factor, [the Second Circuit] has held that where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." Id. at 123 (internal quotation marks omitted); see also McKee, 649 F.2d at 934. If a trial court "refuses to inquire into a seemingly substantial complaint about counsel when he has no reason to suspect the bona fides of the defendant, . . . the defendant may then

13

properly claim denial of his Sixth Amendment right." United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972). However, a court's failure to conduct an adequate inquire will be considered "harmless error" if the reasons given by the defendant for reassignment "are insubstantial and the defendant receives competent representation from counsel." John Doe, 272 F.3d at 123; see also McKee, 649 F.2d at 933 ("Where the failure to inquire causes the defendant no harm, that procedural irregularity cannot of itself be a basis for granting the writ.").

Lopez's August 2003 request for reassignment consisted primarily of a pre-typed form affidavit with three boxes checked off: that counsel failed to (1) "visit defendant at his place of confinement or have him produced to the Court for a consultation"; (2) "provide copies and inform defendant of any Motions filed, Responses and Court's decisions thereto"; and (3) "forward me copies of any bill of particulars and or discovery in his/her possession." (Ex. O to Def. Mot. to Vacate J. (Docket Entry # 10-2) at 2.) The affidavit also contains an "Argument" section with a heading entitled "Assigned Attorney Failed to Investigate, Prepare for Trial, and Take Prompt Action to Protect the Accused, [R]endering the Representation Less than Meaningful." (Id. at 3.) The affidavit provides no details on Lopez's experience with counsel.

At trial, defense counsel informed the trial court judge, Justice Anne G. Feldman, that Lopez wished to address the court regarding his motion for reassignment. (Trial Tr. (Docket Entry # 9-4) at 371-72.) The following colloquy then took place:

> THE COURT: In the middle of trial?
> MR. STELLA: In the middle of trial.
> THE COURT: That's not going to happen.
> MR. STELLA: He's indicated to me he has several issues that he wants to put on the record.
> THE COURT: He can put them on the record, but I don't interrupt trials for the purpose of changing lawyers.

(Id. at 372.)

Lopez then addressed the court:

I want to put on the record that I didn't want this attorney to be representing me. He was not prepared for this trial as I feel. Counsel has not prepared me to the best of his ability. There's evidence that has not been brought to light to this trial.

I've asked for reassignment of counsel. I have a motion here to prove that I asked, and it is docket 2003, October 15, 2003. I put the motion in August 15th. I never heard from anybody concerning this motion. There's a lot of—counsel made a couple of decisions without my consent concerning evidence, and that's about all. I just want to bring it [ ] to your attention, the Court's attention.

(Id.)

Justice Feldman responded that Lopez's counsel was "a very conscientious and thorough lawyer" and had "been very thorough in cross-examining the witnesses in this case." (Id. at 373.) The court added that it did not "know anything about [Lopez's] prior application," but urged Lopez to "cooperate with the lawyer you've got, because this is the lawyer you're going to have." (Id.) Lopez then showed the court a copy of his motion for reassignment, and the court stated: "I've read through this, and I see it is what we call [a] boilerplate motion. I've seen hundreds of them. There's nothing in here that would make me believe that you need another lawyer. Motion denied." (Id.) Lopez then responded, "Thank you, Your Honor." (Id.) He did not raise the issue for the remainder of trial.

On direct appeal, the Appellate Division concluded that the trial court's inquiry was "sufficient," reasoning that "[n]o further investigation was required because [Lopez's] conclusory assertions did not suggest a serious possibility of irreconcilable conflict with defense counsel." Lopez, 49 A.D.3d at 899.

The Appellate Division's determination was reasonable. This court is certainly troubled by the dismissive fashion in which Justice Feldman denied Lopez's motion—especially by her statement that reassignment was "not going to happen" before she even heard the reasons for it,

15

and by her apparent categorical policy against "interrupt[ing] trials for the purpose of changing lawyers." (Trial Tr. (Docket Entry # 9-4) at 372.) Nevertheless, there was nothing particularly deficient about the inquiry Justice Feldman actually conducted. She ultimately reviewed Lopez's motion and gave Lopez a full opportunity to explain its basis. Having done so, she was entitled to rule on Lopez's motion without further inquiry, notwithstanding her unfortunate disdain.[9] See McKee, 649 F.2d at 934 ("If the reasons [for the motion for reassignment] are made known to the court, the court may rule without more."); cf. Allison, 2011 WL 3298876, at *11 (where the court "engaged petitioner in a dialogue" regarding his motion for reassignment, but the petitioner "gave no specific reasons, other than a lack of confidence in [his counsel], for his dissatisfaction," the trial court did not violate its duty to inquire); Shorter v. Corcoran, No. 05-CV-0417 (MT), 2009 WL 3165608, at *5 (W.D.N.Y. Sept. 28, 2009) (trial court conducted adequate inquiry where it "permitt[ed] Petitioner to explain his motion on the record").[10]

Even if the trial court had failed to adequately inquire into Lopez's motion, that error would be harmless for two reasons. First, the grounds for reassignment given by Lopez *at the time* were "insubstantial." John Doe, 272 F.3d at 123. Lopez's Petition alleges in some detail that his counsel failed to communicate with him prior to trial. (See Part III.A.3, infra.) Lopez's *motion*, however, did not go into any significant detail about the breakdown in communication that he now alleges occurred; his motion consisted of mostly pre-printed, boilerplate allegations that were essentially untailored to his particular experiences with counsel. (See Ex. O to Def.

---

[9]     Because Lopez's motion for reassignment was resolved at trial, Justice Sullivan's post-trial decision regarding the motion is not pertinent to the adequacy of the court's inquiry. (Cf. Pet. at 5.) And Lopez's allegation that "Justice Sullivan's Law Secretary . . . recommended that [Lopez's] motion for new counsel be granted" (id. at 1) is legally irrelevant.

[10]     The out-of-circuit cases Lopez cites in support of his position (see Pet. Reply at 2-6) are distinguishable. In Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000), and United States v. Walker, 915 F.2d 480 (9th Cir. 1990), for example, the trial court ignored the defendant's motion for reassignment entirely. See Schell, 218 F.3d at 1025; Walker, 915 F.2d at 483. That was not the case here.

Mot. to Vacate J.)  Nor did Lopez supply any meaningful additional detail when given an

opportunity to do so at trial, instead resting on the conclusory statements that his attorney "was

not prepared for this trial," that counsel had "not prepared [Lopez] to the best of his ability," and

that there was "evidence that ha[d] not been brought to light."  (Trial Tr. (Docket Entry # 9-4) at

372.)  Cf. United States v. Hsu, 669 F.3d 112, 123 (2d Cir. 2012) (district court did not abuse its

discretion in denying motion for reassignment where defendant did not sufficiently alert the

court to the supposed "total lack of communication" between him and his attorney).

Second, the record does not suggest that any alleged problems between Lopez and his

counsel prior to trial persisted during the trial itself or impaired counsel's effectiveness at trial.[11]

Among other things, counsel gave an opening statement; made numerous objections; vigorously

cross-examined the prosecution's witnesses; recalled Officer Kasyjanski as a defense witness in

order to elicit testimony concerning entries that he had made in his memo book; and gave a

forceful summation spanning thirty-two pages of the trial transcript, which argued that the

prosecution had failed to prove the accuracy of the identification testimony beyond a reasonable

doubt, emphasized the lack of physical evidence tying Lopez to the crime, and noted certain

inconsistencies in the testimony of the prosecution's witnesses.  (See Trial Tr. (Docket Entry

# 9-5) at 417-47 (summation).)  Counsel's competent representation during trial renders harmless

any failure on the part of the trial court to inquire into Lopez's motion for reassignment.  See

Norde v. Keane, 294 F.3d 401, 412 (2d Cir. 2002) (where "the trial judge should have inquired

into [defendant's] belief that he was not being properly represented" but "a review of the record

show[ed] that [he] at all times received vigorous and capable representation . . . , the failure of

the trial judge to inquire into [defendant's] request was harmless"); John Doe, 272 F.3d at 123

---

[11]    To the extent that Lopez suggests that his counsel's effectiveness was impaired because he did not comply
with Lopez's request to call co-defendant Edwin Cruz as a witness (see Pet. at 11), such a contention lacks merit, as
will be discussed below (see Part III.B.2.f, infra).

(failure to conduct adequate inquiry is harmless where "the defendant receives competent representation from counsel"); Stephens v. Costello, 55 F. Supp. 2d 163, 171 (W.D.N.Y 1999) (even if trial court conducted an inadequate inquiry, that error was harmless because defendant's "concern that [ ] communication difficulties prevented [counsel] from preparing for trial" was not borne out by the record).

In sum, the trial court conducted an adequate inquiry into Lopez's motion for reassignment and, in any event, any deficiencies in this inquiry were harmless because (1) the reasons Lopez gave for reassignment were insubstantial; and (2) Lopez received competent representation during the trial itself. The second John Doe factor thus weighs against Lopez.

### 3.    Lack of Communication

The third John Doe factor is "whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." 272 F.3d at 122. Lopez claims "that counsel failed to communicate with [him] for approximately a three month period prior to [his] trial," and that his "letters and phone calls" to counsel during that period "received no response." (Pet. at 4, 6.) He also alleges that, "in the seven months prior to [his] trial from the period of July 25, 2003, until February 19, 2004, [he] only s[aw] his defense counsel on one occasion on November 25, 2003, for several minutes in the courtroom." (Id. at 4.) According to Lopez, "[c]ounsel made no effort to communicate with [him] for trial preparation[ and] trial strategy," and did not interview him. (Id. at 4, 7.) Nevertheless, the third John Doe factor weighs against Lopez for two main reasons.

First, as discussed above, Lopez did not provide these details to the trial court, either by way of his motion for reassignment or when he was given an opportunity to explain the basis of the motion during trial. Nor did Lopez provide these facts to the Appellate Division on direct

appeal. (See Def. App. Div. Br.) Thus, these facts are irrelevant to the court's determination of whether the state court's adjudication of Lopez's claim was unreasonable.[12] See Greene v. Fisher, 132 S. Ct. 38, 44 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits."). And the conclusory statements Lopez *did* provide to the state court through his motion and at trial were insufficient to plausibly demonstrate a total breakdown of communication with counsel.

Second, as discussed above, the record does not suggest that trial counsel failed to adequately perform or communicate with Lopez during the trial itself. Thus, even assuming that there was a "total lack of communication" between Lopez and his counsel prior to trial, Lopez has not shown that this lack of communication "*prevent[ed] an adequate defense.*" John Doe, 272 F.3d at 122 (emphasis added); cf. United States v. Simeonov, 252 F.3d 238, 242 (2d Cir. 2001) (holding that because the transcript "reveal[ed] that [counsel] advocated aggressively on his client's behalf, both in cross-examining witnesses and in his closing remarks . . . , the district court did not abuse its discretion in its decision that the conflict between [defendant] and his attorney was not so great that it had resulted in total lack of communication preventing an adequate defense" (internal quotation marks omitted)); Byas v. Keane, No. 97-CV-2789 (SAS), 1999 WL 608787, at *9 (S.D.N.Y. Aug. 12, 1999) (no good cause for reassignment due to lack of communication because "counsel was entirely familiar with the facts and principles of the case such that he was able to file pre-trial motions, conduct cross-examination of witnesses and provide a cogent defense").

---

[12] The court notes that Lopez might not have had sufficient grounds for reassignment even taking the facts raised in Lopez's Petition on their own terms. Similar or more severe breakdowns of communication have been found by courts in this Circuit not to justify the grant of a motion for reassignment. See, e.g., Allison, 2011 WL 3298876, at *12 (no good cause for reassignment where "[p]etitioner complained that [counsel] failed to visit him in jail, communicate with him or with his family, and respond to his letters," but where he "did have the opportunity to see [counsel] in court on [one occasion]"); Shorter, 2009 WL 3165608, at *4-6 (no complete breakdown in communication despite attorney's failure to visit defendant in jail).

4.   Defendant's Contribution to the Lack of Communication

There is no indication in the record that Lopez "substantially and unjustifiably contributed to the breakdown in communication." John Doe, 272 F.3d at at 123. Of course, because Lopez did not provide the state court with any significant details about his relationship with defense counsel, there is little to inform the court as to who was responsible for any breakdown in communication. Nevertheless, the court will assume that the fourth John Doe factor cuts in Lopez's favor.

\*   \*   \*   \*   \*

In sum, the first and fourth John Doe factors favor Lopez, but the second and third factors weigh against him. The court considers the second and third factors—the adequacy of the trial court's inquiry and whether there was a total lack of communication between Lopez and his counsel—to be more significant than the first and fourth; they speak most directly to the merits of Lopez's motion and the reasonableness of the trial court's ruling on those merits. See generally McKee, 649 F.2d at 931 ("[I]n order to warrant a substitution of counsel during trial, the defendant *must* show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." (emphasis added)). In any event, the John Doe factors at best break evenly in Lopez's case. Under these circumstances, and particularly in light of the lack of Supreme Court precedents directly on point, the court is unable to conclude that the Appellate Division's rejection of Lopez's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

**B.     Ineffective Assistance of Counsel**

Lopez argues next that his trial counsel provided him with ineffective assistance, in violation of the Sixth Amendment as applied to the states through the Fourteenth Amendment.[13] (Pet. at 6.) The New York Supreme Court held that this claim—first raised in Lopez's post-conviction motion to vacate judgment—was "both procedurally barred and without merit." (N.Y. Sup. Ct. Decision & Order of July 30, 2009, at 1.) The court concludes that Lopez's claim is not procedurally barred, but that the state court's adjudication of the claim on the merits was not contrary to, or an unreasonable application of, clearly established federal law.

      1.     Procedural Bar

In ruling on Lopez's motion to vacate judgment, the New York Supreme Court concluded as follows:

> Defendant has failed to substantiate the alleged non-record facts contained in his claims with sworn allegations or other evidence (CPL § 440.30[4][b]).  While defendant attacks nearly every aspect of trial counsel's representation, defendant fails to document his claims with evidence to establish whether counsel's performance was indeed deficient, as alleged here.  Accordingly, defendant's claims are now barred from collateral review.

(Id. at 3.) As noted above (see Part II.B, supra), this court has "an independent duty to scrutinize" whether the state court's decision is an adequate procedural bar to the assertion of Lopez's ineffective assistance claim. Cone, 556 U.S. at 465. It is not.

New York Criminal Procedure Law § 440.30(4)—the provision on which the state court rested its conclusion that Lopez's claim was procedurally barred—states: "Upon considering the *merits* of [a motion to vacate judgment], the court may deny it *without conducting a hearing* if . . . (b) [t]he motion is based upon the existence or occurrence of facts and the moving papers do

---

[13]     Lopez also argues that this ineffective assistance violated the New York Constitution, but it is well-established that "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

not contain sworn allegations substantiating or tending to substantiate all the essential facts." (Emphases added.) Contrary to the state court's determination, § 440.30(4)(b) does not operate as a procedural bar to a movant's claims; rather, the provision permits the post-conviction court to rule on the *merits* of a motion to vacate without conducting a hearing, in the event that the movant fails to substantiate the facts alleged with sworn allegations or other evidence. Thus, § 440.30(4)(b) does not provide an independent and adequate state ground for denying federal review of Lopez's ineffective assistance claim, and the court will proceed to the merits of that claim. See Cone, 556 U.S. at 467.

      2.    Merits

Ineffective assistance of counsel claims are governed by the Supreme Court's holding in Strickland v. Washington, 466 U.S. 668 (1984). See Williams, 529 U.S. at 390. In Strickland, the Court established a two-prong test to determine whether a defendant's Sixth Amendment right to effective assistance of counsel is violated.

First, under Strickland's "performance" prong, a petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." Strickland, 466 U.S. at 688. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, a court must "not normally fault counsel for foregoing

22

a potentially fruitful course of conduct if that choice also entails a significant potential

downside," or if the lawyer otherwise had "a reasonable justification for the decision." Greiner,

417 F.3d at 319 (internal quotation marks omitted).

Second, under Strickland's "prejudice" prong, the petitioner must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Id. at 694. "It is not enough for the defendant to show that the

errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable

probability is a probability sufficient to undermine confidence in the outcome." Id. at 693-94.

Establishing a claim for ineffective assistance of counsel is a "heavy burden" that, in the

context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential

review accorded state court adjudications under [AEDPA]." Eze v. Sendkowski, 321 F.3d 110,

112 (2d Cir. 2003); see also Harrington, 131 S. Ct. at 788 ("The standards created by Strickland

and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly

so." (internal quotation marks and citation omitted)). "[I]t is not enough to convince a federal

habeas court that, in its independent judgment, the state-court decision applied Strickland

incorrectly"; instead, the petitioner must show that the state court "applied Strickland to the facts

of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002).

"And, because the Strickland standard is a general standard, a state court has even more latitude

to reasonably determine that a defendant has not satisfied that standard." Knowles v.

Mirzayance, 556 U.S. 111, 122 (2009).

Lopez asserts several grounds for his ineffective assistance claim. He argues that

counsel: (1) failed to adequately communicate with him prior to trial (Pet. at 6-7); (2) failed to

seek formal discovery, conduct an investigation, and present an alibi defense (id. at 7, 11);

(3) improperly withdrew Lopez's notice of intent to testify before the grand jury (id. at 7-8);

(4) failed to request missing police reports related to Officer Kasyjanski's testimony (id. at 8-9);

(5) failed to object to Lopez's sentencing as a persistent violent felony offender (id. at 9-10); and

(6) failed to call co-defendant Edwin Cruz as a witness (id. at 11). For the reasons that follow, none of these assertions provides a basis for habeas relief.

<blockquote>a.   *Failure to Communicate with Lopez*</blockquote>

As discussed above, Lopez claims that his defense counsel failed to communicate with him for three months prior to trial and did not respond to his letters and phone calls during that period; that he only saw counsel once—for several minutes in the courtroom—in the seven months prior to trial; and that counsel did not interview him or confer with him on trial preparation and strategy.[14] (Pet. at 6-7.)

This claim fails for a similar reason to that discussed in Part III.A.3 above. Because the record does not suggest that any communication problems significantly affected counsel's performance at the trial itself, any lack of communication between Lopez and his counsel neither rendered counsel's assistance ineffective nor prejudiced Lopez. See Jones v. Conway, 442 F. Supp. 2d 113, 126 (S.D.N.Y. 2006) (noting that "there is no set rule for the number of times counsel must meet with a defendant," and that the petitioner failed to establish prejudice because the record revealed "that petitioner's trial counsel was active and effective in presenting a strong defense on petitioner's behalf"); Jelinek v. Costello, 247 F. Supp. 2d 212, 273 (E.D.N.Y. 2003) (counsel's lack of communication with defendant falls below constitutional standards only if lack of communication "materially hampers the fashioning of a defense"); Matos v. Miles, 737 F. Supp. 220, 222 (S.D.N.Y. 1990) ("[e]ven assuming that [defendant] did not speak to counsel,"

---

[14]    Lopez also argues that his counsel "failed to develop a working relationship with [him]." (Pet. Reply at 9.) But the Sixth Amendment also does not "guarantee[] a meaningful relationship between an accused and his counsel." Morris, 461 U.S. at 14 (internal quotation marks omitted).

defendant had not shown prejudice because the record revealed "that counsel possessed a thorough command of the facts"); cf. United States ex rel. Bradley v. McCann, 423 F.2d 656, 657 (2d Cir. 1970) (rejecting ineffective assistance claim on prejudice grounds even though appointed attorney did not meet with defendant until the day the trial was to begin).

> b. *Failure to Conduct Formal Discovery, to Conduct an Investigation, and to Present an Alibi Defense*

Lopez argues that his trial counsel was ineffective because counsel "did not seek formal discovery," "did not investigate," and did not "present an alibi defense."  (Pet. at 7, 10.)  "Such undetailed and unsubstantiated assertions . . . have consistently been held insufficient to satisfy either Strickland prong." Polanco v. United States, No. 99-CV-5739 (CSH), 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000) (collecting cases); see also Greiner, 417 F.3d at 321 (counsel is not required to "investigate comprehensively every lead or possible defense . . . or to scour the globe on the off-chance something will turn up" (internal quotation marks omitted)).  Lopez provides no specific detail on what his counsel failed to investigate or what kind of alibi defense counsel omitted to pursue.  And as Justice Sullivan noted, because "defense counsel received open file discovery there was no need to make additional discovery motions." (N.Y. Sup. Ct. Decision & Order of July 30, 2009, at 5.)

> c. *Withdrawal of Notice of Intent to Testify Before Grand Jury*

Lopez argues that his counsel provided ineffective assistance by withdrawing Lopez's notice of intent to testify before the grand jury without Lopez's consent, which "effectively precluded [Lopez] from exercising his absolute right to appear as a witness."[15] (Pet. at 7.)  This claim fails for two reasons.

---

[15]    New York Criminal Procedure Law § 190.50 gives a defendant the right to appear as a witness at a grand jury proceeding.

First, the state court's factual determination that Lopez *had* in fact been consulted on this issue was not "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see also Miller-El, 537 U.S. at 340. In support of its opposition to Lopez's motion to vacate judgment, the State submitted an affirmation from Lopez's counsel stating that counsel "conferred with defendant about his testifying in the grand jury," and that "defendant agreed that [counsel] should withdraw his notice of intent to testify in the grand jury." (Stella Aff. ¶ 3.) Justice Sullivan found this affirmation "credible" in light of the fact that "defendant was present on February 24, 2004 when counsel . . . stated that he had spoken to defendant 'prior to July 25th and communicated to the assigned assistant prior to July 25th the withdrawal of [Lopez's notice of intent to testify].'" (N.Y. Sup. Ct. Decision & Order of July 30, 2009, at 5.) Lopez's Petition gives the court no reason to doubt Justice Sullivan's credibility determination, let alone "clear and convincing" reasons. 28 U.S.C. § 2254(e)(1).

Second, given his eventual conviction, Lopez was not prejudiced by his failure to testify at the grand jury. See Bingham v. Duncan, No. 01-CV-1371 (LTS) (GAY), 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) ("Given that any defect in the grand jury proceeding was cured by petitioner's subsequent conviction, . . . it necessarily follows as a matter of law that petitioner cannot establish that any errors made by his trial counsel with respect to the grand jury proceeding prejudiced him . . . ." (internal quotation marks and alteration omitted)); Gee v. Conway, 664 F. Supp. 2d 225, 230 (W.D.N.Y. 2009) ("[F]ederal habeas courts repeatedly have declined to find that such claims warrant habeas relief, primarily because a petitioner typically cannot show that he was prejudiced . . . ."). Indeed, Lopez "does not mention what evidence he would have presented if he had appeared as a witness," further demonstrating that was not prejudiced. Gee, 664 F. Supp. 2d at 231; see also Hutchings v. Herbert, 260 F. Supp. 2d 571,

26

578 & n.2 (W.D.N.Y. 2003) (by failing to show "what he would have told the grand jury that would have prevented his indictment," petitioner "failed to demonstrate any prejudice from the alleged failure of his attorney to ensure an opportunity for him to testify before the grand jury").

d. <i>Failure to Request Missing Police Reports</i>

Lopez next contends that his counsel was ineffective because he failed to request missing police reports discussed during Officer Kasyjanski's testimony. (Pet. at 8-9.) Specifically, Officer Kasyjanski testified that Lopez was in possession of certain currency belonging to Luis Abreu at the time of Lopez's arrest, and that Officer Kasyjanski noted down this fact. (Tr. (Docket Entry # 9-1) at 30.) Lopez alleges that he informed defense counsel that Officer Kasyjanski's testimony was untrue, but that counsel did not request the Officer's notes. (Pet. at 9.) Lopez claims that he has since located the notes through a Freedom of Information Act Request and that these notes would have been "extremely help[ful]" to him at trial because they "contradict[]" Officer Kasyjanski's testimony. (Id.)

Neither Lopez's Petition nor his reply provides any explanation as to how the notes he purportedly obtained contradict Officer Kasyjanski's testimony, let alone in a matter that would have required the prosecution to turn over the notes upon counsel's request. See People v. Rosario, 9 N.Y.2d 286 (1961). Thus, Lopez has not established that he was prejudiced by defense counsel's failure to request the notes.

e. <i>Failure to Object to Sentencing</i>

Lopez argues that counsel was ineffective because he failed to object to Lopez's sentencing as a persistent violent felony offender. (Pet. at 9-10.) He claims that he never had "the opportunity to challenge the constitutionality of [his] prior convictions." (Id. at 10.) However, Lopez does not provide any basis for the court to conclude that his prior convictions

27

*were* unconstitutional, or that Lopez otherwise did not qualify as a persistent violent felony offender. Thus, even assuming that the State failed to comply with its sentencing procedures and that Lopez's counsel was unreasonable in failing to object to Lopez's sentencing, nothing in Lopez's papers suggests that Lopez suffered prejudice in the form of an improper sentence. Cf. Seifert v. Keane, 74 F. Supp. 2d 199, 209 (E.D.N.Y. 1999) (petitioner failed to show prejudice from counsel's failure to object to predicate violent felony determination because it was "not at all clear that [such an] argument would have carried the day").

      f.     *Failure to Call Edwin Cruz as a Witness*

Lopez's final basis for his ineffective assistance claim is that his counsel failed to call co-defendant Edwin Cruz as a witness, despite "knowing that Edwin Cruz had testimony to exonerate [Lopez] from the charges." (Pet. at 11.) Specifically, on May 27, 2003, Edwin Cruz sent a notarized affidavit to the Kings County District Attorney stating that on the night of the robbery, he "was with a friend known as Dave"; that he and "Dave" committed the robbery; and that he was "arrested with some other guy that [he didn't] know and that didn't have anything to do with this crime." (Ex. B to Def. Mot. to Vacate J. (Docket Entry # 10-2).) Lopez claims that he informed his counsel of this affidavit but that counsel did not bring it to the court's attention. After trial, Cruz provided another affidavit stating that "Lopez was not with [Cruz] at the time [of] the robbery." (Ex. F to Def. Mot. to Vacate J. (Docket Entry # 10-2) ¶ 2.) Lopez argues that, in light of these facts, counsel's failure to call Cruz as a witness "is unexplainable." (Pet. at 11.) The court disagrees.

"The decision not to call a particular witness is typically a question of trial strategy that reviewing courts are ill-suited to second-guess," even with respect to those witnesses who "might offer exculpatory evidence." Greiner, 417 F.3d at 323. As Justice Sullivan noted, Cruz's

28

affidavits were "contradicted and undermined by Cruz's sworn testimony at his plea allocution"
(N.Y. Sup. Ct. Decision & Order of July 30, 2009, at 4), during which he indicated that the
person who committed the robbery was the person who had been sitting with him in the
courtroom that day, i.e., Lopez (Tr. (Docket Entry # 9-1) at 83). When Cruz was questioned
about the affidavit in which he stated that a person named "Dave" committed the crime with him,
Cruz answered that this statement was untrue. (Id. at 83-84.) Justice Sullivan determined that,
"[p]resented with such an unreliable witness who had identified defendant before the court in a
plea allocution," counsel's decision not to call Cruz was "prudent" because "Cruz's prior
inculpatory testimony and proposed perjurous testimony would damage the defense."[16] (N.Y.
Sup. Ct. Decision & Order of July 30, 2009, at 4.) This conclusion was not an unreasonable
application of Strickland. Cf. Greiner, 417 F.3d at 319, 323 (noting that the court must "not
normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also
entails a significant potential downside," and concluding that defense counsel could not be
faulted for failing to call witnesses whose testimony "would have opened the door to the
prosecution's introduction of [potentially damaging] evidence"); Velazquez v. Poole, 614 F.
Supp. 2d 284, 340 (E.D.N.Y. 2007) (defense counsel's failure to call certain alibi witnesses was
reasonable because there were "strategic reasons" for that decision).

* * * * *

In sum, although Lopez's ineffective assistance claim is not procedurally barred, the state
court's rejection of this claim on the merits was not contrary to, or an unreasonable application
of, clearly established federal law.

---

[16] Cruz's second affidavit was not available to defense counsel at the time of trial, and is therefore irrelevant
to Lopez's ineffective assistance claim. See Strickland, 488 U.S. at 690 (reasonableness of counsel's decision must
be judged based on facts "viewed as of the time of counsel's conduct").

## C.    Sentencing as a Persistent Violent Felony Offender

Finally, Lopez argues that the trial court denied him due process in sentencing him as a

persistent violent felony offender. (Pet at 12-13.) Specifically, Lopez argues that he was denied

due process because the State failed to comply with New York Criminal Procedure Law

("C.P.L.") § 400.16, which requires the State to file a predicate felony statement and give the

defendant an opportunity to controvert the allegations in the statement if it seeks to sentence the

defendant as a persistent violent felony offender. (Pet. at 12-13.) Lopez concedes that the

prosecution did file a predicate felony statement, but claims that this "is where compliance with

the statute ended." (Id. at 12.) He asserts that "[t]he prosecution never sought to have [him]

arraigned on the statement" and that "the court never confronted [him] with the prior convictions

alleged against him, much less gave [him] an opportunity to challenge them." (Id. at 12-13.)

Lopez did not "fairly present[]" his due process claim to the state courts. Daye, 696 F.2d

at 191. Lopez's argument to the Appellate Division with respect to his sentencing made no

mention of the United States Constitution, nor did it otherwise suggest that the State's failure to

comply with C.P.L. § 400.16 violated federal law. (See Def. App. Div. Br. at 18-20.) Rather,

his arguments focused entirely on "rights created exclusively by New York state law." Scullark

v. Greiner, No. 02-CV-1834 (PAC) (RLE), 2005 WL 3454730, at *3 (S.D.N.Y. Dec. 15, 2005)

(Report and Recommendation) (no exhaustion of claim regarding sentencing process). Although

Lopez was not required to cite "book and verse on the federal constitution" to "fairly present" his

due process claim, Picard, 404 U.S. at 278, nothing in his argument to the Appellate Division

was "likely to alert the court to the claim's federal nature," Daye, 696 F.2d at 192. His brief

cited only New York State cases, none of which conducted a constitutional analysis of a

sentencing procedure. Cf. Daye, 696 F.2d at 194. And other than the mere fact that C.P.L.

§ 400.16 is "procedural" in nature, nothing about Lopez's assertion of his claim, which was phrased entirely in terms of the nuanced requirements of C.P.L. § 400.16, would have "call[ed] in mind a specific right protected by the Constitution." Id. Nor do Lopez's unique factual allegations fall "well within the mainstream of constitutional litigation." Id.

Because Lopez did not properly raise his due process claim with the Appellate Division, the question becomes whether this claim should be deemed unexhausted or procedurally barred. That depends, as discussed above (see Part II.B, supra), on whether Lopez is still capable of properly raising the claim in state court. If not, the claim is procedurally barred, see O'Sullivan, 526 U.S. at 848; Turner, 262 F.3d at 122-23; Lloyd, 771 F. Supp. at 574; if so, the claim is unexhausted, and the court must either dismiss Lopez's entire Petition or deny the entire Petition on the merits, see 28 U.S.C. § 2254(b)(2); Rose, 455 U.S. at 522.

As explained in the footnote, it is not entirely clear whether Lopez is currently capable of bringing his due process claim in a New York court.[17] The court need not decide this issue,

---

[17]     Respondent contends that Lopez may move in state court to set aside his sentence pursuant to C.P.L. § 440.20. (Resp. Opp'n at 20.) That provision permits a court to "set aside [a defendant's] sentence upon the ground that it was unauthorized, illegally imposed or otherwise invalid as a matter of law." C.P.L. § 440.20(1). It also provides, however, that "the court must deny [a motion to set aside sentence] when the ground or issue raised thereupon was previously determined on the merits upon an appeal from the judgment or sentence." Id. § 440.20(2).
        As discussed above, Lopez did not fairly present his due process claim to the Appellate Division on direct appeal, and so the Appellate Division addressed only Lopez's argument that his sentence as a persistent violent felony offender violated New York law. Lopez, 49 A.D.2d at 899-900. But the court is unaware of any New York case law addressing whether C.P.L. § 440.20(2) applies only when the appellate court has adjudicated the precise claim raised in the § 440.20 motion, or whether it also applies when the appellate court adjudicates a different claim that raises substantially similar issues or arises from substantially similar facts. In other words, it is unclear whether, under § 440.20(2), Lopez would be precluded from filing a motion to set aside sentence on federal due process grounds because of the Appellate Division's determination that Lopez's sentencing did not violate New York law. See generally C.P.L. § 440.20(2) (court must deny motion to set aside sentence "when the ground or issue" has been previously determined on direct appeal (emphasis added)). This issue might be all the more difficult where, as here, there appears to be no reason why Lopez failed to raise his due process claim before the Appellate Division. Compare People v. Pham, 287 A.D.2d 789, 790 (3d Dep't 2001) (concluding that the "County Court was correct in denying defendant's postconviction motion to . . . set aside the sentence, as all of the allegations of error appear on the record and could have . . . been raised on direct appeal"), with People v. Collier, 79 A.D.3d 1162, 1163 & n.2 (3d Dep't 2010) ("[A] motion to set aside a sentence pursuant to C.P.L. 440.20 is not barred by failure to raise the issue of illegality on direct appeal . . . . To the extent that this Court's prior decisions may be read to preclude a C.P.L. 440.20 motion where the illegality of the sentence could have been raised on a direct appeal, they should not be followed." (citations omitted)).

however, because whether or not the court finds Lopez's claim procedurally barred will not affect the ultimate adjudication of this Petition. If his claim is procedurally barred, the court would reject the claim on that ground; if his claim is unexhausted, the court would, for the reasons discussed below, reject it on the merits. See 28 U.S.C. § 2254(b)(2). The court thus turns to the merits of Lopez's due process claim.

"Sentencing procedure is 'subject to due process rights.'"[18] Dewall v. Superintendent, Mohawk Corr. Facility, No. 05-CV-5583 (NGG) (RLM), 2008 WL 3887603, at *13 (E.D.N.Y. Aug. 20, 2008) (quoting Torres v. United States, 140 F.3d 392, 404 (2d Cir. 1998)). "Due process requires that Petitioner: (1) 'not be sentenced based on materially false information'; (2) 'not be sentenced based on a material misapprehension of fact'; and (3) 'be given notice and an opportunity to contest the facts upon which the sentencing authority relie[d] in imposing the sentence.'" Id. (quoting Torres, 140 F.3d at 404).

Lopez does not contend that he was sentenced based on materially false information or based on a material misapprehension of fact. See id. He also does not dispute that he was given notice—through the State's filing of a predicate felony statement—that the sentencing court was considering his four previous felonies and that he could potentially be sentenced as a persistent violent felony offender. See Lopez, 49 A.D.3d at 900. Lopez asserts only that he was not given the opportunity to "controvert the constitutionality of his prior convictions." (Pet. at 13.) The record does not support this assertion.

---

[18] One court has concluded that "[w]ether the trial court properly adjudicated petitioner a persistent violent felony offender is a matter of state law" and therefore cannot form the basis of a petition for writ of habeas corpus. Little v. Greiner, No. 98-CV-156 (H), 1999 WL 1390249, at *6 (W.D.N.Y. Aug. 27, 1999). This court respectfully disagrees and concludes that, like any sentencing procedure, New York's persistent violent felony offender statute is subject to the limitations of the Due Process Clause. Cf. Thipen v. Brown, No. 06-CV-3110 (NG) (VVP), 2008 WL 5110890, at *13 (E.D.N.Y. Dec. 2, 2008); McLaurin v. Kelly, No. 94-CV-1560 (RSP) (GJD), 1998 WL 146282, at *8 (N.D.N.Y. Mar. 27, 1998).

At a sentencing hearing on March 30, 2004, after the State noted that it would be asking for a sentence as a persistent violent felony offender, defense counsel stated: "there is not much I could say with respect to [Lopez's] prior record. He has spent perhaps eighteen of the last twenty years incarcerated." (Sentencing Tr. of Mar. 30, 2004, at 3.) Later in that hearing, the court asked Lopez if he "want[ed] to say anything about the sentence in this case," and Lopez responded:

> Yes ma'am. As you know I am proclaiming my innocence throughout this trial. Thank God the young boy wasn't hurt in any kind of way, but I also would like to say that I feel I didn't receive a fair trial because of the prosecutor withh[o]lding evidence and the contradicting witness' statements that was given in this courtroom.
>
> I've been found guilty. *I just hope that you don't judge me by my past criminal history, but only by the charges I was found guilty of in this courtroom.* Thank you.

(Id. at 5 (emphasis added).)

Thus, when explicitly given an opportunity to object to his sentence, Lopez did not argue that he did not qualify as a persistent violent felony offender or that his prior convictions were unconstitutional. Indeed, Lopez *still* has not made such an argument, either in his Petition or his reply. The trial court therefore did not deprive Lopez of his due process rights in sentencing him as a persistent violent felony offender. See Dewall, 2008 WL 3887603, at *13; cf. Thipen v. Brown, No. 06-CV-3110 (NG) (VVP), 2008 WL 5110890, at *13 (E.D.N.Y. Dec. 2, 2008) (petitioner's sentencing as a persistent violent felony offender did not violate his due process rights because petitioner "was given the opportunity to challenge the predicate convictions").

In sum, Lopez did not fairly present his due process claim to the state courts. See Daye, 696 F.2d at 191. To the extent that this failure renders Lopez presently incapable of raising his claim in state court, the claim is procedurally barred. See O'Sullivan, 526 U.S. at 848; Lloyd,

771 F. Supp at 574. And to the extent that this failure renders Lopez's claim merely unexhausted, the claim fails on the merits nonetheless. See 28 U.S.C. § 2254(b)(2).

## IV. CONCLUSION

For the reasons set forth above, Lopez's Petition for Writ of Habeas Corpus is DENIED. Lopez has made a substantial showing of the denial of his Sixth Amendment rights with respect to the trial court's denial of his motion for reassignment of counsel. See 28 U.S.C. § 2253(c)(2). Thus, a certificate of appealability shall issue with respect to the following question: "Was the Appellate Division's conclusion that the trial court did not violate Lopez's Sixth Amendment right to counsel by denying his motion to replace his court-appointed attorney contrary to, or did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States?" See Miller-El, 537 U.S. at 336 (certificate of appealability will issue if the petitioner "show[s] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks and alteration omitted)). No certificate of appealability shall issue on Lopez's remaining claims because Lopez has not made a substantial showing of a denial of a constitutional right with respect to those claims. See 28 U.S.C. § 2253(c)(2). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
    May 21, 2012

NICHOLAS G. GARAUFIS
United States District Judge